29 C.C.P.A.(Patents)

### In re JAYNE et al.

#### Patent Appeals No. 4619.

Court of Customs and Patent Appeals.
June 15, 1942.

Ellis S. Middleton, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claim 3 in appellants' application for a patent for an alleged invention relating to a method of manufacturing guanyl urea formate.

The claim reads: "3. The method of making guanyl urea formate which comprises reacting dicyandiamide and oxalic acid in the molar proportion of 1 : 1, in aqueous solution, at a temperature exceeding 70° C.

and below decomposition, cooling the reaction mixture, filtering the solids therefrom, washing the same with water and acetone and air-drying the product."

The reference is: Haag in "Liebig's Annalen," Vol. 122 (1862), pp. 29 and 30.

As will be observed from the appealed claim, appellants' process comprises reacting dicyandiamide and oxalic acid in *equimolecular* proportions at a temperature exceeding 70° C. There are other limitations in the claim. However, they need not be given consideration here as the question of patentability of appellants' process depends, according to the decisions of the tribunals of the Patent Office, on whether the reference publication discloses a process which produces guanyl urea formate (appellants' product), and one in which, as in appellants' process, dicyandiamide and oxalic acid are reacted in equimolecular proportions.

The Haag article, dated 1862, is entitled "Dicyandiamidine Oxalate," which concededly means guanyl urea oxalate. The article states:

" * * * If we mix dicyandiamide with a concentrated solution of oxalic acid then there will be effected in the cold, in a still higher degree on being heated, *an evolution of gas; carbonic acid and carbon monoxide* pass off and that, as tests show, in equal parts by volume. This is due to a decomposition of oxalic acid. When the gas evolution is over then on evaporating the oxalic acid salt will crystallize out and that in the form of small, hard, round grains or in distinctly formed crystalline scales. The oxalic acid determination gave:

"0.3170 g. gave 0.1070 g. calcium carbonate, in other words 30.4% oxalic acid.

"The formula 2 ($C_4H_6N_4O_2$), $C_4H_2O_8$ requires 30.6% oxalic acid.

"The gas evolution occurring in the formation of this salt is due without doubt to the decomposition of a portion of the added oxalic acid; whether it stands in equivalent ratio to the amount of dicyandiamide used in the test in such a way that through every molecule of dicyandiamide 1 molecule of oxalic acid is decomposed by extraction 2 equivalent amounts of water whereby an equivalent amount of dicyandiamidine would be formed, this question I have not decided by way of experiments. However, it seems probable to me that the decomposition of the oxalic acid is due to the fact that dicyandiamide extracts from oxalic acid the water necessary for is conversion into dicyandiamidine." (Italics ours.)

It will be observed from the reference article that Haag stated that he produced dicyandiamidine oxalate (guanyl urea oxalate), and that, in the carrying out of his process, carbonic acid (carbon dioxide) and carbon monoxide gases, in equal parts by volume, were evolved.

Appellants state in their application that in reacting dicyandiamide with oxalic acid, in equimolecular proportions, they were amazed to discover that instead of *guanyl urea oxalate,* they produced *guanyl urea formate.* Appellants further state in their application that when their solution was heated to 70° C. a "vigorous evolution of carbon dioxide began"; that is, but one gas—carbon dioxide—was evolved in their process, whereas in the Haag process two gases—carbon dioxide and carbon monoxide, in equal parts by volume—were evolved.

It is conceded by the Patent Office tribunals that the product produced by appellants' process is *guanyl urea formate.*

In rejecting the appealed claim, the Primary Examiner stated that the Haag article disclosed the evolution of but one gas (carbon dioxide) during the process therein related, and that in his article Haag had "mistakenly identified his product as" dicyandiamidine oxalate *(guanyl urea oxalate),* when, as a matter of fact, the product he produced was *guanyl urea formate.* In other words, the examiner held that Haag had actually used equimolecular proportions of dicyandiamide and oxalic acid, the proportions used by appellants, and that, therefore, appellants' process was unpatentable over the Haag reference article.

In explaining that Haag was mistaken in stating that he actually produced *guanyl urea oxalate,* the examiner stated, *inter alia* : "In 1862 [the year of the Haag publication] the technique for chemical analysis was not too exact and apparently Haag made the mistake of thinking that his product was the oxalate instead of the formate. Nevertheless, Haag does clearly disclose the process and anyone following it would produce the *formate*." (Italics quoted.)

The examiner further stated that the "formation of an *oxalate* will *not* produce a gas. The reaction would be a simple neutralization." (Italics quoted.)

In its decision, the Board of Appeals adopted the views expressed by the Primary Examiner, stating that Haag "apparently carries out the same method as that involved in the claim in the production of his product."

No reference was made in either the Primary Examiner's decision or that of the Board of Appeals to the fact that the reference clearly discloses the evolution of two gases (carbon dioxide and carbon monoxide) in equal parts by volume.

It is contended by counsel for appellants, and correctly so we think, that when equimolecular proportions of dicyandiamide and oxalic acid are reacted, as in appellants' process, but one gas—carbon dioxide —is evolved; that carbon monoxide *is not and cannot be evolved* in such a process; and that, although the Haag article does not disclose the molecular proportions of dicyandiamide and oxalic acid employed in his process, it is evident from his statement that carbon dioxide and carbon monoxide are evolved in equal parts by volume, and from the following equation that, *instead of equimolecular proportions,* Haag undoubtedly used 2 parts of dicyandiamide and 3 parts of oxalic acid:

reference discloses the reaction between dicyandiamide— $NH_2C(:NH)NHCN$—and oxalic acid.

The Solicitor for the Patent Office states in his brief that "The crux of the rejection [of the appealed claim] is whether Haag employs equimolecular proportions of dicyandiamide and oxalic acid, and, as a subsidiary question, whether carbon dioxide ($CO_2$) is the only gas evolved upon their reaction." It is further stated in the Solicitor's brief that "The primary examiner and the Board did not specify what portion of the Haag article recites that equimolecular proportions of the dicyandiamide; and oxalic acid are reacted, *but they may have found a suggestion thereof in the first sentence of the fourth paragraph of the article.* As to the evolution of carbon dioxide, to which they referred, the article does mention the passing off of that gas, *though it likewise mentions the passing off of carbon monoxide."* (Italics ours.)

In the Solicitor's supplemental brief, referring to the hereinbefore quoted equation set forth in the supplemental brief of counsel for appellants, it is stated that "appellants have balanced their equation by assuming the oxalate produced by Haag to be *di*-guanyl urea oxalate. This assumption is consistent with such facts as are presented in the Haag article * * *." (Italics quoted.)

$$2\ NH_2C(:NH)NHCN + 3\ (COOH)_2 \longrightarrow$$

Dicyandiamide      oxalic acid

$$[NH_2C(:NH)NHCONH_2]_2 \qquad (COOH)_2 + 2\ CO_2 + 2CO$$

guanyl urea oxalate          carbon    carbon
                                                dioxide   monoxide

By using 2 parts of dicyandiamide and 3 parts of oxalic acid; two gases (carbon dioxide and carbon monoxide, in equal parts by volume) were evolved in the Haag process, and the product produced by that process was, as stated by Haag, *guanyl urea oxalate.*

Counsel for appellants also points out in his brief, and his statement is not challenged by the Solicitor for the Patent Office, that in attempting to support the statement in his decision that the formation of an oxalate will not produce a gas and that the reaction would be a simple neutralization, the Primary Examiner showed the reaction between guanyl urea—dicyandiamidine $NH_2C(:NH)NHCONH_2$—and oxalic acid $(COOH)_2$, whereas the Haag

At the time of the oral arguments in this court it was suggested by counsel that probably the reason the tribunals of the Patent Office overlooked the statement in the reference that in carrying out the process therein set forth both carbonic acid (carbon dioxide) and carbon monoxide gases were evolved, may have been because the Patent Office official translation of the Haag article was *not before them.*

We have given careful consideration to the views expressed by the tribunals of the Patent Office, but are unable to find any suggestion in the reference that *equimolecular proportions* of dicyandiamide and oxalic acid were employed in the Haag process. It is clear, however, that in the Haag process carbon monoxide gas

is evolved, and that such gas is not evolved in the production of *guanyl urea formate* by appellants' process.

In order to hold that the reference anticipates appellants' process, it is necessary that we ignore statements made in the Haag article as to the reactions he obtained in, and the product he produced by, his process. This we are unable to do.

For the reasons stated, the decision of the Board of Appeals is reversed.

Reversed.